IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN KNOWLES,

    Plaintiff,

    v.

    Civil Action 2:20-cv-6277
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Elizabeth P. Deavers

CORECIVIC ASSOCIATION, *et al.*,

    Defendants.

## INITIAL SCREEN
## REPORT AND RECOMMENDATION

Plaintiff, a state inmate under the supervision of the Ohio Department of Rehabilitation and Corrections ("ODRC") at the Southern Ohio Correctional Facility ("SOCF"), proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983 against the ODRC, Core Civic Association ("Core Civic"), the Warden of the Northeast Ohio Correctional Center ("NEOCC Warden"), Brian Whittrup ("Whittrup"), Vince Vantell ("Vantell"), Ryan Wyman ("Wyman"), Michael Birch ("Birch"), and Amy Sweezy-Milhoun ("Sweezy-Milhoun"). (ECF No. 1-1.) Plaintiff alleges violations of his Constitutional rights and state law claims and seeks compensatory and punitive damages as well as declaratory and injunctive relief. (*Id.*) The Court previously granted Plaintiff leave to proceed *in forma pauperis* in this action. (ECF No. 10.)

This matter is before the Court for an initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2), 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. Having performed the initial screen, for the

reasons that follow, the Undersigned **RECOMMENDS** that the Plaintiff's Complaint be **DISMISSED** in its entirety.

I.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> * * *
>    (B) the action or appeal--
>       (i) is frivolous or malicious;
>       (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil

---

[1] Formerly 28 U.S.C. §1915(d).

2

Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).  Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x. 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**II**.

Plaintiff is currently incarcerated at the SOCF in Lucasville, Ohio.[2] Although unclear, it appears that Plaintiff's allegations relate to a series of events that occurred while he was incarcerated at the North East Ohio Correctional Center ("NEOCC") in Youngstown, Ohio, which is operated by Core Civic.

First, Plaintiff alleges that his procedural due process rights and his rights guaranteed by the Eighth and Fourteenth Amendments were violated when he was disciplined at NEOCC for violating an institutional rule prohibiting the possession of contraband ("Rule 51") in the Spring of 2018. Specifically, Plaintiff alleges that on May 23, 2018, Defendant Wyman moved Plaintiff to a new cell and directed Plaintiff's new cellmate to plant a cell phone on him. The attachments to Plaintiff's Complaint indicate the Plaintiff was charged with violating Rule 51 at NEOCC for possessing a cell phone on May 25, 2018. (ECF No. 1–1, PAGE ID # 30.) Plaintiff further alleges that he did not receive a fair hearing for that Rule 51 charge as evidenced by the fact that before the hearing took place, the Rule Infraction Board (R.I.B.) chairman, Defendant Birch (sometimes spelled Berch), indicated to other prison staff that Plaintiff would be found guilty. In addition, Plaintiff alleges that his new cell mate withdrew earlier statements admitting that he owned the cell phone because Defendant Wyman coerced him to recant.

Plaintiff also alleges that his procedural due process rights were violated on or around April 2, 2018, when Defendant Wyman delivered legal mail to him that had been opened outside of his presence. Plaintiff also claims that Defendant Wyman also denied Plaintiff access to his Jpay email account even though he needed it to print documents for pending legal cases.

---

[2] According to the ODRC website (http://www.drc.ohio.gov/OffenderSearch/ (last visited on March 15, 2021), Plaintiff is currently housed at the SOCF in Lucasville.

4

Plaintiff next alleges that he received inadequate medical care from NEOCC during a hunger strike that he staged after his request to replace Defendant Birch as his R.I.B. chairman was denied. Attachments to Plaintiff's Complaint indicate that Plaintiff's hunger strike took place at NEOCC on or around May 30, 2018. (*Id*. at PAGE ID # 24.)

Plaintiff additionally alleges that his procedural due process and Eighth Amendment rights were violated at NEOCC when he was disciplined for violating Rule 51 again in the Fall of 2018. Specifically, Plaintiff alleges that on August 27, 2018, staff searched his cell but found nothing. Nevertheless, Plaintiff was handcuffed and taken to a shower in the segregation unit where he was forced to stand for several hours in a phone booth sized cage that reeked of urine. While Plaintiff was in the segregation unit, a homemade weapon and a cell phone were planted in a rolled-up blanket outside his cell. The cell phone contained pictures of Facebook posts. Defendant Wyman visited Plaintiff in the segregation unit to report that these items had been found. Another inmate admitted that that he owned the weapon. In addition, a prison staff member told Defendant Birch that the items were not found when Plaintiff's cell was originally searched. Defendant Birch, however, did not allow that staff member to be a witness at Plaintiff's R.I.B. hearing. Attachments to Plaintiff's Complaint indicate that Plaintiff was found guilty of violating Rule 51 at NEOCC on September 10, 2018, and that he was placed in restrictive housing ("RH") until September 24, 2018, and in limited privilege housing ("LPH") from September 24, 2018 until November 24, 2018. (*Id*. at PAGE ID # 29.) The R.I.B. also recommended a security review. (*Id*.)

Plaintiff also alleges that on September 15, 2018, Defendant Vantell let him out of segregation to set him up for a rule violation. In particular, Plaintiff alleges that his rights were again violated when he was disciplined at NEOCC for violating a prison rule prohibiting the use

5

of a cell phone to harass another ("Rule 55"). Attachments to Plaintiff's Complaint indicate that on September 17, 2018, Defendant Vantell charged Plaintiff with violating Rule 55 at NEOCC after it received reports that Plaintiff had been using a cell phone to contact a woman and post messages to her Facebook page even though she had a civil protection order prohibiting Plaintiff from contacting her. (*Id*. at PAGE ID # 21.)

Plaintiff further alleges that the staff at NEOCC used their power to slander and defame him in the conduct report charging him with violating Rule 55 and that on September 18, 2018, Defendants Yauger, Vantell, Wyman, and Birch conspired to punish him excessively for the Rule 55 violation. Attachments to Plaintiff's Complaint indicate that on September 18, 2018, Defendant Yauger did a security review at NEOCC and recommended that Plaintiff's security level be increased to a level 4. (*Id*. at PAGE ID # 25–27.) Plaintiff alleges that Defendant Yauger made this recommendation even though his R.I.B. hearing for the Rule 55 violation had not yet taken place. Plaintiff also alleges that when he was taken to that hearing, a prison staff member told him that Defendants Vantell and Birch were trying to expedite the hearing given that Plaintiff's security level had already been increased. Plaintiff states that "[t]he incident was said to have been racially motivated." (*Id*. at PAGE ID # 8.) Attachments to the Complaint indicate that Plaintiff was found guilty of violating Rule 55 at NEOCC on September 25, 2018. (PAGE ID # 31.) He was placed in LPH until October 30, 2018, and subject to phone restrictions until October 26, 2018. (*Id*.)

Plaintiff alleges that while he was in LPH, he was fed meals from trays that had fecal matter on them; forced to live in an environment where fecal matter was smeared on windows, doors, phones, kiosk machines, and floors; and where biohazards were only cleaned with a mop

6

and water. He states that the institution knew that these constituted biohazards but purposely failed to act to protect inmate safety.

Plaintiff finally alleges that he spoke with the NEOCC Warden about his rights violations but that the NEOCC Warden referred Plaintiff to the chief of classifications, Defendant Whittrup. Plaintiff indicates that he wrote a level to Defendant Whittrup with proof that his rights had been violated but that Plaintiff was transferred to a level 4 maximum security prison anyway— presumably SOCF in Lucasville where he is currently incarcerated. Although Plaintiff attaches documents to his Complaint that appear to have been generated at SOCF in 2019, he makes no factual allegations in his Complaint about any events that occurred there.

### III.

As described above, all of Plaintiff's factual allegations appear to pertain to events that took place while he was incarcerated at NEOCC. NEOCC is located in Youngstown, Ohio, which is situated in the Northern District of Ohio. Consequently, venue in the Southern District of Ohio may not be proper.[3] *See 2*8 U.S.C. § 1391. In this circumstance, the Court has the discretion to dismiss or, if it is in the interest of justice, transfer Plaintiff's claims to the Northern District. *See* 28 U.S.C. 1406(a).[4] For the reasons set forth below, the Undersigned concludes that it would not be in the interest of justice to transfer Plaintiff's claims. *See Stanko v. Fed. Bureau of Prisons*, No. CIV.A. 09CV035-HRW, 2009 WL 1067295, at *4 (E.D. Ky. Apr. 21,

---

[3] S.D. Ohio Civ. Rule 82.1(c) provides that an action against a defendant resident in this District "shall be filed at the location of Court that serves a county in which at least one defendant resides." ODRC is a resident of this District. Nevertheless, as set forth below, ODRC is not a proper defendant in this case.

[4] a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. 28 U.S.C.A. § 1406.

2009) (on initial screen, court declined to transfer but dismissed without prejudice plaintiff's First and Fifth Amendment claims because plaintiff failed to state a constitutional claim); *May v. Anthony*, No. 07-2549-JDB/DKV, 2008 WL 1984958, at *3 (W.D. Tenn. May 1, 2008) (on initial screen, court declined to transfer and dismissed plaintiff's claim against doctor where plaintiff failed to provide facts supporting Eighth Amendment violation).

A.      Claims Against ODRC

It would not serve the interests of justice to transfer Plaintiff's claims against ODRC. To plead a cause of action under § 1983, a plaintiff must plead "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). The Supreme Court has held that a state or its officials acting in their official capacities do not constitute 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (6th Cir. 1989). Consequently, multiple courts have concluded that ODRC is not a "person" subject to suit under § 1983. *See e.g.*, *Peeples v. Dep't of Rehab & Corr.*, No. 95-3117,1997 WL 445714, at *1 (6th Cir. July 26, 1995) (affirming dismissal of § 1983 suit against the Ohio Department of Rehabilitation because "a state is not a 'person' subject to suit under § 1983); *Fields v. Ohio Dep't of Rehab & Corr.*, No. 2:15-cv-1271, 2015 WL 6755310, at *4 (S.D. Ohio Nov. 4, 2015) (dismissing § 1983 against the Ohio Department of Rehabilitation under § 1915(e) because neither Ohio nor its agencies were "persons" under § 1983); *Henton v. Ohio Dep't of Rehab. and Corr.*, No. 1:19 CV 462, 2019 WL 4346266, at *1 (N.D. Ohio Sept. 12, 2019) ("The ODRC is an agency of the State of Ohio and, therefore, not a 'person' under § 1983 for the purposes of the statute.").

8

Moreover, under the Eleventh Amendment, federal courts lack jurisdiction over suits brought by private citizens against a state or its instrumentalities unless the state explicitly consents to the suit or Congress properly abrogates the States' sovereign immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). ODRC is an instrumentality of the state of Ohio. *Lowe v. Ohio Dep't of Rehab.,* No. 97–3971, 1998 WL 791817, at *2 (6th Cir. Nov. 4, 2008). Ohio has not waived its immunity. *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012). And Congress did not abrogate the State's Eleventh Amendment immunity when it enacted § 1983. *Will*, 491 U.S. at 67. Accordingly, ODRC is immune from suit for money damages and injunctive relief. *See Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (The Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments[.]") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)); *Damstoft v. Ohio*, 24 F. App'x. 299, 300 (6th Cir. 2001) ("Unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief, and in some cases even declaratory relief, in federal court.") (citing *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73 (1987) and *Thiokol Corp.*, 987 F.2d at 381); *Bratton v. Univ. of Akron*, 24 F. App'x. 299 (Table) (6th Cir. 1998) ("The University of Akron, as an instrumentality of the State of Ohio, is immune from an action for damages and injunctive relief in federal court because Ohio has not expressly waived its immunity.") (citing *Welch*, 483 U.S. at 472-73; *Thiokol Corp.*, 987 F.2d at 381).

B.     Claims Against Core Civic

It would not serve the interests of justice to transfer Plaintiff's claims against Core Civic. As previously indicated, "[f]or liability under 42 U.S.C. § 1983, Plaintiff must prove the deprivation of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law." *Whitson v. CoreCivic*, No. 3:17-cv-00951, 2017 WL 3025599, at *2 (M.D. Tenn., Jul. 17, 2017) (citing *Flagg Bros., Inc.*, 436 U.S. at 155). Core Civic appears to be a private corporation that manages private prisons, including NEOCC. Nevertheless, Core Civic performs a traditional state function because it operates NOEC, where the actions described in the Complaint allegedly took place. Therefore, Core Civic acts under the color of state law. *Street Corr. Corp. of Am.*, 102 F. 3d 810, 814 (6th Cir. 1996); *see also Thomas v. Coble*, 55 F. App'x. 748, 748 (6th Cir. 2003) ("A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983.").

Unlike the state, however, Core Civic is not entitled to Eleventh Amendment immunity. Therefore, it may be liable under § 1983 "if its official polices or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x. 338, 341 (6th Cir. 2014). Plaintiff does not allege, however, that Core Civic had a policy that caused Plaintiff's rights to be violated. Plaintiff, therefore, fails to allege with any particularity that a Core Civic policy was the "moving force" behind his injuries. *See Dawson v. CoreCivic, Inc.*, No. 3:17-cv-01083, 2017 WL 4005111, at *3 (M.D. Tenn., Sept. 12, 2017) (holding that plaintiff had "not alleged that the violation of his constitutional rights resulted from acts representing official policy or custom adopted by CoreCivic" and therefore plaintiff had "not stated Eighth Amendment claims upon which relief can be granted under § 1983"); *see also Freeman v. CoreCivic, Inc.*, No. 3:18-cv-

0397, 2018 WL 7137982, at *5 (M.D. Tenn., Dec. 20, 2018) (finding that CoreCivic was entitled to summary judgment because plaintiff had "not presented even a minimal amount of evidence showing that a policy or custom of CoreCivic was the moving force and cause behind the alleged unconstitutional conduct and the injuries he alleges he suffered").

C.  Plaintiff's § 1983 Claims Against Defendants Vantell, Wyman, and Birch

Nor would the interests of justice be served by transferring Plaintiff's § 1983 claims against Defendants Vantell, Wyman, and Birch, because those claims are barred by the statute of limitations. "Although the statute of limitations is normally an affirmative defense that must be raised by defendants in an answer, if the limitations bar appears on the face of the complaint, the Court may apply it during the initial screening process." *Boddie v. Barstow*, No. 2:14-cv-0106, 2014 WL 2611321, at *3 (S.D. Ohio May 2, 2014), *report and recommendation adopted*, No. 2:14-cv-106 2014 WL 2608123 (S.D. Ohio June 11, 2014) (citing *Watson v. Wayne Cty.*, 90 Fed. App'x. 814, *1 (6th Cir. 2004)) ("If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue sua sponte"). This Court has applied that rule in cases screened under § 1915(a). *Id*. (citing *Smith v. Warren Cty. Sheriff's Dept.*, 2010 WL 761894 (S.D. Ohio Mar. 2, 2010)).

"In § 1983 suits, the applicable statute of limitations is determined by state law, while the 'date on which the statute of limitations begins to run . . . is a question of federal law.'" *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (*quoting Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (alteration in original)). Ohio Revised Code § 2305.10 sets forth a two-year statute of limitations for § 1983 claims. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). That statute of limitations "begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Scott v. Ambani*, 577

F.3d 642, 646 (6th Cir. 2009). Although Plaintiff does not indicate when he mailed his Complaint, he signed it on October 12, 2020. (PAGE ID # 10.) Assuming Plaintiff placed it in the prison mail system the same day, any claims that accrued prior to October 12, 2018, are untimely. All of Plaintiff's allegations against Defendants Vantell, Wyman, and Birch are related, however, to events that occurred prior to October 12, 2018. Accordingly, Plaintiff's § 1983 claims against these defendants are time-barred.

D.     <u>Plaintiff's § 1983 Claims Against NEOCC Warden and Defendants Witthrup and Sweezy-Milhoun</u>

Plaintiff also fails to state a § 1983 claim against the other individual Defendants. "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Accordingly, a plaintiff must allege "personal involvement" involvement of the defendant in causing plaintiff's injuries." *Dotson v. Wilkinson*, 477 F. Supp.2d 838, 847 (N.D. Ohio 2007); *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). Plaintiff's Complaint does not, however, provide sufficient factual content or context from which the Court could reasonably infer that the NEOCC Warden or Defendant Whittrup were personally involved in violating his rights. Plaintiff alleges that he spoke to the NEOCC Warden about his rights violations but that the NEOCC Warden referred the matter to Defendant Whittrup. Plaintiff alleges that he wrote a letter to Defendant Whittrup who knew about his past and present problems. Plaintiff does not allege when these events occurred. But even if they are not time-barred, these allegations fail to establish that these Defendants were personally involved in any Constitutional-rights violations. At best, Plaintiff perhaps implies that the NEOCC Warden and Defendant Whittrup were responsible as supervisors. But § 1983 does not permit *respondeat superior* liability. Instead, a supervisor is only liable when he "encouraged the specific incident

12

of misconduct or in some way directly participated in it." *Combs v. Wilkinson*, 315 F.3d 548,558 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff fails to allege such encouragement or participation by these two defendants.

Plaintiff's § 1983 claims against Defendant Sweezy-Milhoun are even more deficient—Plaintiff's Complaint contains no allegations about her. A basic essential of a proper complaint is that it contain factual allegations against each named defendant. *See Potter v. Clark,* 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint . . . is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given to *pro se* complaints.") (citation omitted); *see also Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir. 1988) (affirming dismissal of plaintiff's claim because plaintiff "failed to allege, directly or inferentially, *any* facts" in support of a material element of her claim) (emphasis in original). Here, Plaintiff's failure to mention Defendant Sweezy-Milhoun renders any purported claim against her subject to dismissal for failure to state a claim.

D.  Plaintiff's State Law Claims[5]

It would not serve interests of justice to transfer Plaintiff's state law claims. Plaintiff alleges that NEOCC's staff negligently failed to provide him with adequate medical care during his hunger strike that took place on or around May 30, 2018. (ECF No. 1–1, at PAGE ID # 7, 24.) To the extent Plaintiff attempts to allege a medical malpractice claim under Ohio law, such a claim is subject to a one-year statute of limitation. *Smith v. Core Civic of America*, No. 4:19-cv-1417, 2019 WL 5579010, at *3 (N.D. Ohio Oct. 29, 2019) (citing Ohio Revised Code

---

[5] The caption of Plaintiff's Complaint lists the following state law claims "negligence, trespass, false imprisonment, malice, slander, libel, battery, defamation." (ECF No. 1 at PAGE ID # 4.) The Complaint does not contain any additional factual allegations.

13

§2305.113(A)). Plaintiff signed his Complaint on October 12, 2020, however, well after that one-year period expired.

Plaintiff alleges that "staff at NEOCC were abusing their positions of power to slander and defame [Plaintiff] maliciously" when Plaintiff was charged with violating Rule 55 on September 18, 2018. (ECF No. 1–1, at PAGE ID # 9, 21.) Claims for defamation and slander are also subject to a one-year statute of limitation under Ohio Revised Code § 2305.11(a). *Turpin v. U.S. Atty. N.D. Ohio*, No. 107 CV 1548, 2007 WL 2409719, at *6 (N.D. Ohio Aug. 20, 2007); *Carter v. Nat'l City Bank*, No. 1:17-CV-508, 2018 WL 3543699, at *3 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, No. 1:17CV508, 2018 WL 6681226 (S.D. Ohio Dec. 19, 2018). Plaintiff signed his October 12, 2020, Complaint long after that deadline expired as well.

## IV.

For the reasons explained above, it is **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED** in its entirety.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

**DATE:  March 15, 2021**                               *s/ Elizabeth A. Preston Deavers*
                                                        **ELIZABETH A. PRESTON DEAVERS**
                                                        **UNITED STATES MAGISTRATE JUDGE**